(No. 25389.—

IN RE WILLIAM FELDMAN, Attorney, Respondent.

*Opinion filed April 10, 1940—Rehearing denied June 5, 1940.*

CHARLES LEVITON, *amicus curae.*

WARREN H. ORR, for respondent.

564

· Mr. JUSTICE FARTHING delivered the opinion of the court:

This is a disciplinary proceeding begun by the committee on inquiry of the Chicago Bar Association. The occurrences upon which the complaint is based began in September, 1925, when Abraham Feldman, Lewis Feldman, and Nathan Feldman, brothers of the respondent, William Feldman, were successful bidders at a judicial sale of certain land in Cook county with a bid of $32,350. In November, 1925, before the master's deed had been issued, attorney Irving Flamm met with Abraham and Lewis Feldman and agreed to purchase the land for $37,350; $5000 was paid as earnest money, and a written contract was prepared by Flamm and respondent. The vendor's wives did not join in the contract. Respondent said in his opinion they would sign the deed when requested, and that the Feldmans were responsible financially. Feldman testified he told Flamm the master might issue the deed to Flamm direct, and he also suggested to Flamm that the signatures of the sisters-in-law might be had if Flamm cared to wait until the following day. Flamm said he knew the Feldmans were financially responsible at that time, and did not insist upon their wives signing the contract. On December 14, 1925, the master deeded the premises to Abraham, Lewis, and Nathan Feldman, and on the same day Nathan Feldman and wife conveyed, for consideration, an undivided one-third interest to the respondent. When the time came for delivery of the deed to Flamm, Abraham Feldman's wife refused to sign. All the other parties appear to have been willing. Flamm tendered the balance due, but refused to accept the deed without the signatures of the wives. Respondent's offer to return the earnest money was refused. In March, 1926, Abraham and Lewis Feldman served Flamm with a notice of forfeiture.

In 1929, Flamm sued Abraham and Lewis Feldman for damages. The trial of the cause was delayed. In January,

1932, respondent's brothers were in bad financial condition. Respondent testified he had advanced $10,000 to his brothers. To protect himself, respondent then advanced $3000 more, cancelled the prior debt which he said was $10,000, and received a deed from Abraham and Lewis Feldman and their wives. Flamm's suit was finally tried in 1933 and he obtained a judgment against Abraham and Lewis Feldman for $12,650. Flamm assigned the judgment to one Esther Levy. Execution was returned "no part satisfied." Esther Levy then filed a creditor's bill to subject the property to the lien of her judgment. A decree was entered in her favor on July 22, 1936. This decree was affirmed by the Appellate Court, and we denied leave to appeal. The property was levied upon and sold for $7500, leaving a deficiency judgment against Abraham and Lewis Feldman. These proceedings were then instituted. A hearing was had before commissioners. Their report recommended that respondent be suspended for one year. The entire committee on grievances approved the recommendation. The board of managers of the Chicago Bar Association then recommended disbarment. Later, additional evidence was taken. Supplemental reports of the grievance committee were filed, and on July 6, 1939, the board of managers recommended that respondent be suspended for one year.

The fact that respondent's sister-in-law refused to sign the deed does not prove bad faith on his part. We are convinced there was ample and actual consideration for the later transfer of title to respondent. When William Feldman acquired title to the remaining two-thirds interest, Flamm had commenced his suit for damages. There is no showing that he wanted the property at that time, nor is there any showing of ultimate loss to Flamm.

Most of the argument against respondent is based on the language of the Appellate Court opinion in the case of *Levy* v. *Feldman,* which opinion was attached to the complaint. However, the learned author of that opinion, himself a witness before the commissioners, testified, over ob-

jection, that he thought the acts commented on in the opinion did not warrant disbarment.

Many distinguished witnesses have testified to the good reputation of the respondent. Their testimony cannot be ignored.

*Amicus curiae* contends that certain representations made by former counsel for respondent caused the change in discipline recommended, and that such representations amounted to a plea of guilty. Respondent was not present when his counsel was endeavoring to persuade the board of managers to make a less severe recommendation. He has the right to challenge the whole proceeding in this court, and we cannot sustain the contention that his counsel's representations amounted to a plea of guilty.

It is contended by respondent that the abstract of the circuit court and Appellate Court records in the case of *Levy* v. *Feldman,* introduced in evidence, was not competent. Standing alone, it would not be competent. However, at the hearing, both sides made use of the abstract. Respondent specifically made parts of the abstract his exhibits, and he referred to the abstract repeatedly in his testimony. These facts distinguish the instant case from *People* v. *Amos,* 246 Ill. 299. *In re Tuttle,* 371 Ill. 113, and *In re Ellis,* id. 153, involved admissions against interest, and are not applicable here.

When the respondent obtained the deed from his brothers Abraham and Lewis, who were failing in business, he did it to obtain a preference over their other creditors. He did not act at any time as attorney for Flamm or for Flamm's assignee, and he made no false representations. He is not entirely free from blame for putting the title to the land involved beyond the reach of Flamm's judgment, but in our opinion, though he should be censured, we do not think his conduct merits either suspension or disbarment. The respondent is, therefore, discharged.

*Respondent discharged.*