## 34513.  THOMAS *v.* STATE OF GEORGIA.

Decided March 13, 1953.

*Wm. G. McRae*, for plaintiff in error.

*Paul Webb, Solicitor-General, Charlie O. Murphy*, contra.

TOWNSEND, J. ■ Under Code § 9-501, an attorney may be removed, among other reasons, upon it being shown to the satisfaction of the court that he has been guilty of any deceit or wilful misconduct in his profession, or for indecent behavior in or out of the courthouse whereby he becomes a nuisance to the court, his brother members of the bar, or the public. "No formal pleading is necessary in a suit to disbar an attorney at law. If, with reasonable certainty and particularity, it sufficiently apprises the attorney of the nature of the charges, it is good." *Williford* v. *State*, 56 *Ga. App.* 840 (194 S. E. 384). See also *Brant* v. *State*, 72 *Ga. App.* 704 (34 S. E. 2d, 735).

"An executor or administrator may be guilty of conversion where he uses the assets of the estate for his individual purposes or has them transferred to himself as individual owner." 33 C. J. S. 1252, Executors and Administrators, § 244. See also *Bellah* v. *Cleghorn*, 165 *Ga.* 494 (1) (141 S. E. 311). An allegation in a petition for removal of an executor that he has collected and converted to his own use a specified amount of money of the estate is sufficient, as against demurrer, to set forth a state of facts which would authorize removal. *Gibson* v. *Maxwell*, 85 *Ga.* 235 (11 S. E. 615). And it was held in *American Fire & Casualty Co.* v. *Barfield*, 81 *Ga. App.* 887, 891 (60 S. E. 2d, 383) that one who, during the existence of a fiduciary relation, converts a chattel to his own use after being entrusted therewith, with intent to steal, is guilty of larceny after trust, although there was no fraud or pretense in his original acquisition of the property. See also *Lanier* v. *State*, 17 *Ga. App.* 261 (2a) (86 S. E. 417). It is contended by the defendant that since under the provisions of Code § 113-2207 an administrator is liable for payment of interest upon all balances left in his hands at the beginning of each year, over and above the payment of expenses for said year, as ascertained upon final settlement, he is entitled to the use of funds in his hands belonging to an estate which he represents upon payment of interest thereon and, in support of this contention, cites *Bennett* v. *Bird*, 139

*Ga.* 25, 28 (76 S. E. 568), and *Paschal* v. *Melton,* 174 *Ga.* 910, 912 (164 S. E. 757). The former case decided only that, where a guardian had so used the money of the estate and had paid interest thereon, with no attempt to conceal such fact, a ward who waited until many years after the final accounting, and after she had reached majority, to complain of the transaction, was guilty of laches, and it would be inequitable twenty years later to elect to take the land (which had received valuable improvements and greatly appreciated in value) rather than the fund with interest, which she had accepted in final settlement. The latter case held only that the court of ordinary had no jurisdiction to hold an administrator in contempt of court for failing to pay over a sum which was not the actual money collected by him, but which represented a debt by him to the estate. But, if the language of the above cited cases were to be construed as holding that fiduciaries could take the funds of their cestuis que trustent and convert such funds to their own use with impunity merely by paying interest thereon, such holding is not here recognized for the reason that it is in direct conflict with other provisions of law hereinbefore pointed out, and for the further reason that this court is not bound to so recognize the language in these decisions contrary to established rules of law because the same are obiter, in that neither the personal use of the money nor the liability for interest was being passed upon in those cases. There is no authority for an executor, administrator, guardian, or trustee to take the money entrusted to him and convert the same to his own use. On the contrary, such conversion may amount to a crime under the provisions of Code § 26-2805.

As we construe the reason that the administrator is required to pay interest upon all balances left in his hands at the beginning of each year, over and above the payment of expenses for such year, as provided in Code § 113-2207 (4), the law fixes the duties of the administrator as to the disposal of the funds of the estate, and his failure to conform thereto by keeping the money not needed for current expenses and in failing to invest the same as provided by law deprives the beneficiary of the use thereof. Accordingly, for this breach of duty and in order to protect the beneficiary from loss of income, the law requires

that the administrator pay interest on funds so held. We do not construe this, however, as a license to take the money and appropriate it to the individual use of the fiduciary. This would encourage speculation and endanger to loss a fund which is most zealously guarded by the law, on the one hand, and, on the other, would give free rein to those entrusted with the management of estates to make a personal profit from the transaction at the expense of those for whose benefit the funds are held. Administrators, guardians, trustees, and agents are all fiduciaries. Code § 4-211. The agent shall not make a personal profit from his principal's property. § 4-205. The trustee shall not use trust funds to his own profit. § 108-429. By no process of reasoning could a different rule apply to administrators, executors, or guardians. While no doubt the fiduciary becomes liable for interest, this is but cumulative of other liability when he appropriates the money of the cestui que trust to his own use, the gist of the statute providing for liability for such interest being not for the *use* of the money but rather for the *detention* of it.

■ In *Wood* v. *State*, 45 *Ga. App.* 783 (165 S. E. 908), it is held: "An attorney may be disbarred for indecent, unseemly, or unbecoming conduct or conduct unfit according to the high standards which the legal profession must maintain. . . Courts have the inherent power to admit attorneys to the bar, with the right to disbar them for sufficient cause, and the statutes do not limit the general powers of the courts over attorneys, and such attorneys may be removed for other than statutory grounds." See also *Payne* v. *State*, 52 *Ga. App.* 425 (2) (183 S. E. 638); *DeKrasner* v. *Boykin*, 54 *Ga. App.* 29 (186 S. E. 701). As stated in *Williford* v. *State*, supra, "It is not necessary that the conduct of an attorney be criminal in order to subject him to disbarment, or, if that conduct does amount to a criminal offense involving moral turpitude, that there be a conviction of such an attorney before he can be disbarred therefor." Nor is it necessary that the misconduct be limited to what occurs in the course of his work as a member of the bar. Misconduct outside professional dealings may be sufficient to justify disbarment when indicative of moral unfitness for the profession. 5 Am. Jur. 426, Attorneys at Law, §

276, and citations; Re Elmer Smith, 133 Wash. 145 (233 Pac. 288, 43 A. L. R. 102); Re Petition of Law Association of Philadelphia v. Wolfe, 288 Pa. 331 (135 Atl. 732, 50 A. L. R. 380); In re Williams, 221 Minn. 554 (23 N. W. 2d, 4). To the same effect see In re Melin, 410 Ill. 332 (102 N. E. 2d, 119), a similar case on its facts, wherein it was held that acts of conversion by an attorney of money of an estate of which he was executor, amounting to moral turpitude, would be sufficient to bring about disbarment, although the court, under the facts of that case, was affirmed in holding that disbarment was not demanded thereby.

It follows, therefore, that the petition in this case sets out a cause of action and the demurrers were properly overruled.

*Judgment affirmed. Gardner, P. J., and Carlisle, J., concur.*